W. H. RICKARD *vs.* ANTONIO DO COUTO.

APPEAL FROM DISTRICT COURT OF HAMAKUA, HAWAII.

OCTOBER TERM, 1885.

JUDD, C. J.; McCULLY and PRESTON, JJ.

A labor contract read that the laborer was to work for the term of three years from the date of the commencement of the service; held that this meant three calendar years, notwithstanding that the contract, in another section, provided that wages were to be paid for each month of twenty-six days' service.

If the laborer is unable to work from illness, he cannot be compelled to make up the time thus lost, and if he is willfully absent from work, and agrees orally that the lost time charged to him by the master is correct, yet he cannot be compelled to work out the time thus lost, unless the master obtains the adjudication of a Court, under Sections 1419, 1420, Compiled Laws.

*Wood vs. Hookina,* 3 Hawn. 102, and *Wood vs. Afo,* 3 Hawn. 448, distinguished from the case at bar.

Judgment of lower Court reversed.

OPINION OF THE COURT, PER JUDD, C. J.

IT is agreed that the following are the essential facts of this case:

"That said defendant came to this country under a contract

with the Board of Immigration, by which he agreed to work under the direction of said Board for the term of three years, counting from the time of his arrival and commencement of service. The defendant was directed to work, by said Board, for the plaintiff. That said service began September 9, A. D., 1882. That after the 9th day of September, A. D., 1885, defendant stopped working, and plaintiff claimed that defendant was bound to make up eighty-nine and one-fourth days, which it is agreed were not worked, out of the twenty-six working days of each month during said term."

The opinion of the Court is asked on the following questions of law :

1. Can the defendant be now compelled to make up the number of days which he failed to work, if such failure was willful on his part, and without legal excuse, and if the number of days lost during each month was regularly made up at the end of each month, and agreed to by defendant as correct in number.

2. Can defendant be compelled to make up time lost on account of his sickness?

3. Can defendant be compelled to make up legal holidays, occurring during the twenty-six working days of each month?

4. Can the defendant be compelled, under the contract, to complete nine hundred and thirty-six days' work after the expiration of three years, no reason being assigned by employer or employee for the failure to work eighty-nine and one-fourth days, and defendant having, during the three years, regularly tendered his work, except on the days missed?

5. Does the contract, by its terms, call for nine hundred and thirty-six days' work, or does it end at the lapse of three years from its commencement if no desertion has taken place?

The contract which we are to construe is as follows :

"This agreement, entered into this ———— day of ———— in the year of our Lord ————, by and between Augusto da Silva Moreira, single, of age, agent, Portuguese, resident of this city, acting duly authorised by Abraham Hoffnung, married, of age, English, merchant, living in the city of London, as agent for the Board of Immigration, a Bureau of the Government of the Kingdom of Hawaii, in the Island of St. Michaels, Azores, as shown by orig-

inal power of attorney, of the first part, and the party whose name is hereto subscribed, of the second part.

Witnesseth, That whereas the party of the second part is desirous of emigrating to the Hawaiian Islands, there to be employed as an agricultural laborer, under the direction of the said Board of Immigration: Now, therefore, in consideration of a passage to the Hawaiian Islands, on board the steamship Hansa, and a further undertaking by the party of the first part that the said Board of Immigration will pay, or cause to be paid, to the party of the second part, wages at the rate of nine dollars per month, with board and lodging for himself and children under twelve years of age, for each and every month of twenty-six days' service, faithfully performed, during the existence of this agreement (a day's service to be ten hours in the field and twelve hours in the sugar house); such wages to be paid at the end of each calendar month, reckoning from the date of the commencement of such service after arrival at Honolulu. And in consideration of a further undertaking on the part of the party of the first part, to secure the party of the second part full protection under the Hawaiian law, as fully as the same is enjoyed by the native born subjects of the Kingdom, and likewise, in case of sickness, that he shall be supplied with proper medical attendance, and that the said children shall be properly instructed in the public schools, the said party of the second part will duly and faithfully perform such lawful and proper labor as he may be directed to perform under the auspices of the said Board of Immigration, for the term of three years, counting from the day on which he shall commence such service, after arrival in the Kingdom of Hawaii, it being always understood that the contracted party shall not work on Sundays nor on any holiday recognized by the Government, and that his services shall not be transferred without his consent; and the party of the first part, in consideration of the agreement hereinbefore expressed, as being entered into by the party of the second part, hereby agrees to the same, and undertakes that the said Board of Immigration will pay, or cause to be paid, the wages hereinbefore set forth, and will keep and perform, or cause to be kept and performed, all the other stipulations hereinbefore set forth. In testimony whereof, etc."

### By the Court.

What is the term of service for which the laborer engaged under this contract? Is it for three years, *i. e.*, from 9th of September, 1882, to 9th of September, 1885? or is it for thirty-six months of twenty-six days each, in all nine hundred and thirty-six days? We think that the language of the contract sufficiently answers this question. The printed translation of the contract reads that "the said party of the second part will duly and faithfully perform such lawful and proper labor as he may be directed to perform, under the auspices of the Board of Immigration for and during the space of three years next succeeding the date of the commencement of such service after arrival in the Hawaiian Kingdom." Another and more literal translation of this part of the contract appears in the copy quoted in full in the earlier part of this decision. The term of this contract then is three years, commencing from the day on which the laborer begins to work. The time when this contract ends is made certain by the statement when the term is to begin. Three years from a given date would expire when three calendar years have elapsed since this date. This is the rule for the construction of leases and all other contracts, and we see no reason why it should not apply to a labor contract. If the laborer agreed to labor during all the time covered by a term of three years, no time being stated when the labor was to begin, and it appearing by the whole agreement that the contract was for the performance of three years of labor of 312 days each, without reference to the time over which this labor was to be spread, our decision might be different. But here the laborer has not so agreed in terms. He agrees to labor on such working days as will occur during the three calendar years succeeding a date capable of being made certain, *i. e.*, the day of his beginning his service.

Much stress is laid in argument upon the clause that the Board of Immigration contracts "to pay wages at the rate of nine dollars per month with board and lodging for himself and children under twelve years of age, for each and every month of twenty-six days' service faithfully performed during the existence of this agreement." It is to be noticed, that this language (every month of twenty-six days of faithful service) is descriptive of the

term for which nine dollars of wages is to be paid by the employer, and is not repeated in the description of the term of service contracted for by the laborer. The contract further says, "such wages to be paid at the end of each calendar month reckoning from the date of the commencement of such service after arrival in Honolulu." We take it to mean that there shall be at the end of each calendar month a settlement made with each laborer. Payment of wages is not to be postponed. Wages, however small in amount, are not to be suffered to be in arrears; and in reckoning the amount of such wages to be thus paid monthly, twenty-six days of labor is to be compensated with nine dollars, and any less number of days with a proportionately less amount of money. This secures to the laborer twelve stated times per annum when his employer must settle with him and pay him whatever wages may be due. We think it would be unwarrantable to transfer the language employed for the sole purpose of making clear the amount of wages to be paid, and the times of payment, to another part of the contract, in order to define the quantum of labor which the employee is to fullfil.

It is argued that as each year consists of three hundred and sixty-five days, from which deduct fifty-two Sundays, 313 days of work remain upon which the laborer agrees to work, and therefore a year's work will not be fullfilled unless 313 days of actual labor have been executed. But a day is but a subdivision of time, and it could be argued with equal cogency that as each day consists of say ten working hours, therefore a day's work would not be performed if only nine and a half hours' work was fullfilled. An hour might be still further subdivided into minutes and seconds, and each delinquency tacked on to the term. But we do not think that any such detailed account of time was contemplated by the contract. The laborer is bound by this contract to present himself, ready to perform such labor as he may. be directed, during twenty-six working days of each month, and to work ten hours a day in the field, and if in the mill twelve hours, to entitle him to the full wages of nine dollars, unless prevented by sickness or other valid excuses. We think that it was contemplated when the contract was made that the laborer, as a human being, might be ill at some time during the continuance

of the contract. The employer engages "to supply him with proper medical attendance in case of sickness." It seems to be conceded that the laborer is to be lodged and fed during sickness. Whether wages are to be paid to him during sickness is not raised in this case. But as the laborer can only receive nine dollars when twenty-six days of labor have been performed, we presume that he could not claim wages while unable to work on account of sickness. But, as we have above said, when the calendar years have expired which end the term contracted for, the days lost through sickness cannot be tacked on to the term to be worked out thereafter. Cases of hardship might occur to the employer as when, as suggested by counsel for plaintiff, a man might contract for one year's service upon an agreement in form similar to the one we are considering, and be ill eleven and a half months. But it would be a case of greater hardship to the laborer, if, after such a long illness, he would have to work an additional year after his contract had expired. So also Sundays and holidays recognized by the Government, upon which days the laborer is specially exempted from labor, and consequently for which he receives no wages, are not to be taken account of and added to the term of three years, and afterwards discharged in labor. If this could be done, the privilege of not working on those special days would amount to nothing to the laborer, and, so far as he was concerned, it would be valueless to have this exemption mentioned in the contract, for Sundays and Government holidays stand in this contract on the same footing; and if the laborer can be required to make up the days of labor lost to the employer by Sundays and holidays, it would be no privilege to the laborer.

This leads us to the last point to be considered, namely, the penal remedies which the employer has under our laws against the laborer. By the labor laws as they now exist, Sec. 1,419, Compiled Laws, if the person bound to service willfully absents himself from such service without leave from his master, he may be apprehended by the warrant of a police or district justice and restored to his master, and compelled to serve the remainder of the time for which he originally contracted. By the original law (1859) the laborer could be compelled to serve not to exceed

double the time of his absence. The Act of 1882 only authorizes a sentence to make up the time lost by the absence of the laborer. By Sec. 1,420, if the person bound to service refuses to serve when ordered by the magistrate to do so, or refuses to work according to his contract, he may be committed to prison to remain at hard labor until he consents to serve according to law. If he, after having returned to service pursuant to a magistrate's order, again willfully absents himself without leave, he is liable to a fine not to exceed $5 for the first offense, and not to exceed $10 for every subsequent offense. A willful absence, we suppose, is one without sufficient legal excuse. Now if the laborer is unable, from illness, to present himself for work, or if though present at the place of labor he is, from illness, unable to work, he is not derelict, his absence from work is not willful, and he cannot be compelled to make up the time of absence to his master. If the weather be such that it would be detrimental to the health of the laborer to work out of doors, or so that it would not be profitable to the master to proceed with out-door work, his absence from work would not be willful, and though he receives no pay for the days thus lost, he cannot be compelled by the judgment of a magistrate to make up this time.

But the case is put to us of a willful absence from work without leave of the master, for which no arrest is made, and no adjudication of a magistrate obtained ; but the servant agrees that his absence was without legal excuse, and the number of days so lost in each month is regularly entered up at the end of each month and agreed orally by the servant as correct. The agreement to make up this lost time is implied, we presume, from the laborer's assent that the number of days lost is correct in number. Can this agreement be enforced ? We think not. It is a new agreement. It is not in writing, and does not conform to the statute in other respects. By virtue of this new oral agreement to make up lost time the servant is not compellable by the magistrate to serve. The written contract before us does not contain such a stipulation. His liability to service must flow, if at all, from the original contract. We are of the opinion that if a laborer who has absented himself from work willfully and without leave returns

64

again to his master's service, and no notice is taken of it, and the master does not obtain an adjudication that the absence was without legal excuse and a sentence that the lost time must be worked out, he cannot, after the contract has expired, compel the laborer to work out such arrears. The master must be considered in law as having waived the absences.

It becomes necessary to review former decisions of this Court which are cited by plaintiff's counsel as decisive of this case. These are *Wood vs. Hookina,* 3 Hawn. 102 (1869); *Wood vs. Afo,* 3 Hawn. 448 (1873). In the first case the master claimed that a judgment to the effect that the servant should work eight months penal time was not satisfied by the servant continuing in his master's service for eight months, he having worked only 115 days during this period, and not the full score of 208 days. But the case was decided against the master on the ground that he had on his part failed to fulfill the contract as to payment of wages. Remarks of the majority of the Court that the judgment was not illegal, though it imposed a term of service beyond one year after the end of the original term of service, were not necessary to the decision of the case, and must be treated as *obiter dicta.*

The second case. Here the servant had contracted to serve five years, but, when about half the time had expired, he was sentenced for a crime to be imprisoned at hard labor for five years. This sentence he had served, and his master claimed his services for the remainder of the original term of the contract under the law as it then stood which authorized a magistrate, if the person bound to service had willfully absented himself from such service, to impose an additional term of labor not exceeding double the time of absence, but such additional term of service shall not extend beyond one year after the original term of service. The majority of the Court held that the lapse of time during the imprisonment was not a bar to the penal enforcement of the contract if it result from the servant's own act. Much of the reasoning of the majority of the Court is against the view taken by us in the case before us. But that case was upon the construction of a statute now repealed, the latter part of Sec. 1,419 of the Civil Code, which authorized the imposing of an additional term of service in case the original term had not been fulfilled by the ser-

vant. That question does not arise in the case before us. Here we are to construe the contract itself, not the statute which is invoked in its aid.

The judgment of the lower Court ordering the defendant back to plaintiff's service is reversed, and judgment is now ordered for the defendant.

F. M. Hatch, for plaintiff.

P. Neumann, for defendant.

Honolulu, December 24, 1885.